IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LARRY ROCHE | § | |
| | § | CIVIL ACTION NO. 6:05cv280 |
| TDCJ-CID, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The plaintiff Larry Roche, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights.  The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

An evidentiary hearing was conducted on December 13, 2005, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  At this hearing, Roche testified that in December of 2003, while he was at the Powledge Unit, he began having trouble with his pancreas and gall bladder, and was taken to Palestine Memorial Hospital.  Tests were run there, and it was decided that he should be sent to John Sealy Hospital in Galveston for further investigation of his complaints.

Roche was put in an ambulance for transportation to the hospital.  During this transport to Galveston, which is approximately 215 miles from Palestine, Roche said that the ambulance stopped to allow the transportation staff to use the restroom.  He said that he had to use the restroom also, but he was not permitted to do so.

After the ambulance resumed the journey, Roche said, the ambulance driver began driving very erratically.  He said that he believed that the driver was intentionally trying to hit every bump in the road, presumably in an effort to cause discomfort to Roche.  Roche continued to complain that he had to use the restroom, and finally the nurse who was riding in the back of the ambulance with him, whom he identifies only as "Peggy," unstrapped him and gave him a bottle in which to urinate.

Roche stated that he was handcuffed (with his hands in front of him) and in leg irons at the time. When he stood up to relieve himself, the ambulance driver slammed on the brakes, causing him to be thrown forward into the bulkhead. Roche says that the impact rendered him unconscious, broke three ribs, and caused damage to his liver. The nurse riding with him also suffered injuries, but Roche says that these were minor.

When he arrived at the hospital, Roche said, he was placed in ICU observation for 24 hours, and then was placed in the prison part of the hospital. A couple of days after he arrived there, some family members called the hospital and said that Roche's mother had passed away. Roche was taken out of the hospital and sent to the Estelle Unit, where he remained for five days before being returned to the Powledge Unit. He says that he never received any of the tests which were supposed to have been run; Roche indicated at the hearing that his lawsuit concerned both the incident in the ambulance and the medical care which he received in the hospital and thereafter.

Chip Satterwhite, a TDCJ Regional Grievance Coordinator who was present at the Spears hearing, testified under oath concerning Roche's grievance records. Satterwhite stated that the first grievance which Roche filed concerning this incident was filed on March 29, 2005, some 15 months after the incident took place. The grievance was screened (i.e. not processed) and returned to Roche because it was out of time and because Roche requested relief which was not available through the grievance procedure. Roche filed a Step Two appeal, but this appeal was not processed because his Step One grievance had been screened.

On June 3, 2005, Roche submitted another Step One grievance about the incident. This grievance was screened and returned to him because the grievable time period had expired. He filed a Step Two appeal, but this was again returned to him unprocessed because the Step One grievance had been screened.

On March 8, 2005, shortly before he filed his first Step One grievance, Roche filed a civil rights lawsuit about this incident in this Court, under the style of Roche v. TDCJ-CID, et al., civil action no. 6:05cv77. On April 7, 2005, the Honorable Harry W. McKee, United States Magistrate

Judge, issued a Report recommending that the lawsuit be dismissed. Judge McKee observed that Roche was ordered to amend his complaint, including a showing of proof of exhaustion; Roche responded to this order by saying on April 5, 2005, that he had submitted his Step Two grievance on March 30. Judge McKee noted that this response made clear that Roche had not exhausted his administrative remedies because he had filed his lawsuit before the process was completed, and recommended that the case be dismissed without prejudice.

Roche did not file objections to the Magistrate Judge's Report. Instead, on April 19, 2005, he filed a notice of dismissal, stating that he agreed with the Magistrate Judge's Report recommending dismissal without prejudice. A second Report was issued recommending that the motion to dismiss be granted and the case dismissed without prejudice. On May 23, 2005, the Honorable William M. Steger, United States District Judge, adopted the Magistrate Judge's Report and dismissed the case without prejudice. Contrary to what Roche said at the Spears hearing, he was not ordered to exhaust the administrative grievance procedure; rather, Judge McKee recommended dismissal of the lawsuit for failure to exhaust, and in response, Roche filed a motion for voluntary dismissal. The lawsuit was dismissed on this motion. Roche then filed the present case on July 27, 2005.

Roche testified that he was told that he could not file any grievances until the investigation into the incident was complete. He did not state who had told him this, nor did Roche explain why he did not file a grievance concerning his other claim, regarding the medical care which he received after the ambulance ride, which presumably he could have done regardless of the investigation into the ambulance ride.

<u>Legal Standards and Analysis</u>

The primary issue in this case is exhaustion of administrative remedies. Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed for a period of up to

180 days in order to permit exhaustion. 42 U.S.C. §1997e(a)(1). This provision has now been deleted from the law. As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327). No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit..[1]

Exhaustion in the Texas prison system is accomplished through the two steps of the prison grievance procedure. *See* Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998). In this case, Roche's complaint and testimony shows that he filed Step One and Step Two grievances concerning the claims which he raises in this lawsuit, but that these grievances were filed over a year and three months after the incidents forming the basis of his claims, well outside of the time limit for filing grievances.

The Fifth Circuit has specifically stated that the filing of an untimely grievance does not serve to exhaust administrative remedies. Trevino v. Herrera, slip op. no. 02-40864 (5th Cir., Feb. 20, 2003) (unpublished) (citing Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999); Richardson v. Boland, 83 Fed.Appx. 608 (5th Cir., December 10, 2003) (not selected for publication in the Federal Reporter). As the Fifth Circuit explained in Days v. Johnson, 322 F.3d 863, 865 (5th Cir. 2003), the fact that a grievance is untimely does not in itself render the grievance process unavailable and thereby excuse the exhaustion requirement; such a holding would allow inmates to file suit in federal

---

[1] Exhaustion of administrative remedies serves an important purpose by allowing the administrative hierarchy of TDCJ-ID to remain aware of problems which exist at the unit levels, and allowing inmates a means to air grievances with regional officials and to ensure that problems may be corrected, if necessary, by action outside of the unit chain of command. Grievances may also be referred to TDCJ-ID's Internal Affairs Division, which is empowered to conduct investigations and recommend such corrective action as may be necessary, including disciplinary action or criminal charges against employees if the evidence shows that such action is warranted. These purposes are thwarted by the filing of grievances which are untimely and thus cannot be processed.

court despite intentionally evading the exhaustion requirement by failing to comply with the prison grievance system.

In Days, the inmate said that he was unable to comply with the time requirements of the grievance procedure because of an injury to his hand. The Fifth Circuit determined that because the injury prevented him from timely filing a grievance and his untimely grievances were returned unprocessed, Days had exhausted the administrative remedies which were personally available to him. The Court emphasized that the holding was "limited to the narrow facts of the case" and meant that administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is due to a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance. Days, 322 F.3d at 867.

By contrast, in Parker v. Adjetey, 89 Fed.Appx. 886 (5th Cir., Feb. 20, 2004) (not selected for publication in the Federal Reporter), the plaintiff Henry Parker claimed that he could not exhaust administrative remedies because he was hospitalized and in a coma; when he was released from the hospital, Parker said, the 15-day time limit had expired. The Fifth Circuit stated that the exhaustion requirement is mandatory to be construed strictly, and that because Parker did not allege that he had attempted to exhaust the administrative remedies personally available to him, the dismissal of his case for failure to exhaust was affirmed.

In the present case, Roche says that he did not file any grievances because he was told, by some unknown individual at John Sealy Hospital that he could not do so until the investigation was complete. However, Roche was sent to the Estelle Unit four days after his arrival at the hospital, and then back to the Powledge Unit five days later. Thus, he arrived back at his home unit within the time period for filing a grievance, and makes no showing that he was prevented, either physically or in any other way, from doing so.

However, the first grievance which Roche filed concerning this incident came some 15 months later. This distinguishes his case from Days, where the inmate had a physical injury preventing him from filing a grievance within the time period, but filed his grievance as soon as he

was able to do so. By contrast, Roche makes no allegation of a physical injury which prevented him from filing a grievance, and did not file until a year and three months had passed. As a result, Roche has failed to exhaust his administrative remedies, and his lawsuit must be dismissed.

Nor has Roche shown that he is entitled to any other defenses to the exhaustion requirement such as waiver, estoppel, or equitable tolling. *See* Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (noting the possible existence of such defenses). Nothing in the pleadings, testimony, or record indicates that a waiver or estoppel defense applies in this case; the fact that an unknown individual at John Sealy Hospital told Roche he should not file a grievance until the investigation was complete did not prevent him from doing so once he returned to his unit, nor does it amount to "waiver" or "estoppel." Equitable tolling, as a general rule, requires "rare and exceptional circumstances" and does not protect "those who sleep on their rights." *Cf.* Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Coleman v. Johnson, 184 F.3d 398, 403 (5th Cir. 1999) (applying equitable tolling in the habeas corpus context). Roche has not shown rare or exceptional circumstances with regard to his failure to exhaust and his 15-month delay is tantamount to sleeping on his rights. *Compare* Days, 322 F.3d at 865 (inmate filed grievance as soon as he was able).

In passing the Prisoner Litigation Reform Act, Congress intended to impose a mandatory exhaustion requirement upon lawsuits brought by prisoners. The Fifth Circuit has given effect to the manifest intent of Congress by taking a strict approach to the exhaustion requirement. *See* Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). This Court, the Eastern District of Texas, is bound by the dictates of Congress and the precedents established by the Fifth Circuit, and must likewise construe the exhaustion requirement strictly; such a construction mandates the conclusion that Roche has failed to exhaust his administrative remedies.

Without offering an opinion on the merits of Roche's underlying claims, it is difficult to escape the conclusion that if Roche's allegations are true, the refusal to allow him to relieve himself was petty and the slamming on of brakes when he was standing, which he says was done with intent

to injure him, was execrable. Nonetheless, under the terms of the law which this Court must follow, Roche failed to exhaust his administrative remedies and his lawsuit must be dismissed on that basis. *See* Underwood v. Wilson, 151 F.3d at 296 (authorizing dismissal, with or without prejudice, for failure to exhaust). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED without prejudice for failure to exhaust administrative remedies. 28 U.S.C. §1997e. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **14** day of **December, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE